**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| THREE ZERO THREE CAPITAL PARTNERS, LLC, on behalf of itself and 303 Energy Trading Alliance, LLC | ) ) ) ) | |
| Plaintiff | ) ) | No. 08 C 248 |
| v. | ) ) | Judge Blanche M. Manning |
| WILLIAM JAMISON, JR., STEPHEN HARPER, JEFFREY ONG and EVERGREEN ENERGY CAPITAL, LLC | ) ) ) ) | Magistrate Judge Arlander Keys |
| Defendants. | ) | |

**DEFENDANT EVERGREEN ENERGY CAPITAL, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS COUNT II OF
<u>PLAINTIFFS' VERIFIED COMPLAINT AT LAW</u>**

Evergreen Energy Capital, LLC ("Evergreen") and Plaintiff Three Zero Three Capital Partners, LLC ("Three Zero Three") entered into a Trading Advisory Agreement in July 2006. Ignoring the existence of this express contract, Plaintiffs filed this action against Evergreen claiming, among other things, that Evergreen was unjustly enriched in the amount of $160,723.08 when it failed to repay its alleged claw-back obligation under the Agreement. Plaintiffs' claim must be dismissed because the relationship between Plaintiffs and Evergreen is governed by an express contract, which, as a matter of law, bars its unjust enrichment claim. Accordingly, the Court should dismiss with prejudice Count II of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**PERTINENT FACTS ALLEGED IN THREE ZERO THREE'S COMPLAINT[1]**

On July 1, 2006, Three Zero Three and Evergreen entered into a Trading Advisory Agreement in which Evergreen agreed to provide trading advisory services for 303 Energy Trading Alliance, LLC (the "Fund"). (Complaint at ¶5; Trading Advisory Agreement, attached as Exhibit A to the Complaint.) Three Zero Three entered into the Trading Advisory Agreement as the managing member of the Fund. (Complaint at ¶1; Trading Advisory Agreement.)

According to the Trading Advisory Agreement, Three Zero Three was to compensate Evergreen with Incentive Allocations based upon the profitability of the Fund. In particular, Section 6 of Trading Advisory Agreement provided:

> As compensation for the services to be provided hereunder, [Three Zero Three] shall pay [Evergreen] an Incentive Allocation equal to 25% of the Fund's New Net Profits on all assets under the Fund under management by [Evergreen]…The Incentive Allocations will be paid out on a quarterly basis with payment made no more than thirty (30) days after the end of each calendar quarter.

(Trading Advisory Agreement at §6.) Section 6 also contained a claw-back provision, which stated:

> If the aggregate Incentive Allocations paid to [Evergreen] during the first three quarters of a calendar year exceed the actual Incentive Allocations to which [Evergreen] is entitled at the year end based on the calendar year's performance of the Fund, [Evergreen] shall promptly repay such excess to the Fund (not to exceed one-half of the Incentive Allocations already received by [Evergreen] during the calendar year.)…

(*Id.*)

Pursuant to the Trading Advisory Agreement, Evergreen provided trading advisory services in 2007. The first quarter of 2007 was a profitable one for the Fund. (Complaint at ¶10.) In fact, on March 31, 2007, the Fund generated a net trading profit of $1,436,905.44. (*Id.*) Accordingly, Three Zero Three paid Evergreen an Incentive Allocation of $359,226.36 for the

---

[1] Evergreen accepts the facts pled in the Complaint as true for purposes of its Rule 12(b)(6) motion to dismiss only.

- 2 -

first quarter. (*Id.*) Unlike the first quarter, however, the second quarter of 2007 was not profitable for the Fund. As such, Evergreen did not earn an Incentive Allocation for the second quarter of 2007. (*Id.* at 12.)

Then, on August 21, 2007, after less than three quarters of performance, Three Zero Three informed Evergreen that it wished to terminate the Trading Advisory Agreement. (*Id.*) Although Three Zero Three did not allow Evergreen to perform under the Trading Advisory Agreement for the calendar year as set forth in Section 6, Three Zero Three nonetheless claims that, under the claw-back provision, Evergreen is obligated to repay to Three Zero Three $179,613.18, or half of its first quarter, 2007 Incentive Allocation. (*Id.*) According to Plaintiffs, they notified Evergreen of its claw-back obligation on September 28, 2007. (*Id.*) Plaintiffs also claim that defendants William Jamison, Jr., Steven Harper and Jeffrey Ong, as the members and traders of Evergreen, individually agreed to guaranty Evergreen's alleged claw-back obligations. (*Id.* at 11.) According to Plaintiffs, Evergreen, Jamison, Harper and Ong failed to repay the alleged claw-back obligation of $160,723.08.[2] (*Id.* at 14.)

Based upon these allegations, Three Zero Three filed its Complaint in the Circuit Court of Cook County, Illinois, County Department, Law Division on December 6, 2007 on behalf of itself and the Fund. In their Complaint, Plaintiffs assert three claims against Evergreen, Jamison, Harper and Ong: (1) Count I alleges a breach of contract claim against Jamison, Harper and Ong; (2) Count II alleges a claim of unjust enrichment against all defendants; and (3) Count III seeks

---

[2] On September 12 or 13, 2007, Jamison, Harper and Ong sought to redeem the funds invested in their individual capital accounts. As is Three Zero Three's practice, Three Zero Three released 90% of the funds in the individual capital accounts of Jamison, Harper and Ong. While conducting its final monthly accounting, Three Zero Three took back the remaining 10% of the funds left in the accounts of Jamison, Harper and Ong, which represents $18,890.10. Accordingly, in its request for relief, Plaintiffs subtracted this amount from the alleged claw-back obligation of $179,613.18 to come to their alleged damages of $160,723.08. (Complaint at ¶ 13.)

to enforce a line of credit note dated July 27, 2006 extended by Three Zero Three to Evergreen. Evergreen filed a Notice of Removal with this Court on January 11, 2008.

## ARGUMENT

Even considering Plaintiffs' allegations in the light most favorable to them, Planitiffs fail to state a claim for unjust enrichment against Evergreen in Count II. Therefore, pursuant to Fed. R. Civ. P. 12(b)(6), the Court should dismiss Count II with prejudice.

The Court must dismiss a case if, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *AA Sales & Assoc., Inc. & Trade Amer. Corp. v. JT&T Products Corp.*, 48 F. Supp. 2d 805, 807 (N.D. Ill. 1999). In this case, Plaintiffs cannot state a claim for unjust enrichment upon which they are entitled to relief because the Trading Advisory Agreement entered into by Three Zero Three and Evergreen specifically deals with the Incentive Allocation and Evergreen's alleged claw-back obligation that form the basis for the unjust enrichment claim.

Under Illinois law, a claim for unjust enrichment cannot stand where the parties have an express contract that governs their relationship.[3] *See Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) (plaintiff failed to state a claim for unjust enrichment "because that is unavailable where the claim rests on the breach of an express contract"); *Moore's Maintenance & Installation, Inc. v. Hub Group Distrib. Serv.*, No 04 C 4891, 2006 U.S. Dist. LEXIS 68692 (N.D. Ill., Sept. 6, 2002) (dismissing an unjust enrichment claim because the parties relationship was governed by an express contract); *Johnson Prods. Co., Inc. v. Guardsmark, Inc.*, No. 97 C 6406, 1998 U.S. Dist. LEXIS 2491 (N.D. Ill. 1998, Feb. 26, 1998) (dismissing unjust enrichment claim because "under Illinois law a claim for unjust enrichment will not lie where the parties

---

[3] Section 20 of the Trading Advisory Agreement provides that Illinois law will govern the agreement.

have an express contract.").[4]  Because the theory of unjust enrichment is based on a contract implied in law, to recover for unjust enrichment, "the plaintiff must show that the defendant voluntarily accepted a benefit that would be inequitable for him to retain without payment."  *AA Sales & Assoc., Inc.*, 48 F. Supp. at 807 (citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 496-97 (1992)).   Accordingly, if there is a specific contract that governs the parties' relationship, the doctrine of unjust enrichment does not apply.  *Id.*; *see also Utility Audit, Inc. v. Horace Mann Serv.*, 383 F.3d 683, 688-89 (N.D. Ill. 2004) (denying leave to file an unjust enrichment claim because "when two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract.").  Courts prohibit claims for unjust enrichment when there is an express contract "to prohibit a party whose expectations were not realized under the contract from nevertheless recovering outside of the contract."  *Utility Audit, Inc.*, 383 F.3d at 689.

In this case, Three Zero Three and Evergreen entered into an express contract that governed their relationship, which precludes Plaintiffs' claim for unjust enrichment.  On July 1, 2006, Three Zero Three and Evergreen entered into a Trading Advisory Agreement in which Evergreen agreed to provide trading services to the Fund.  The Trading Advisory Agreement specifically governed the incentive allocations that Three Zero Three paid to Evergreen in 2007.  (*See* Trading Advisory Agreement at §6.)  The agreement also contains the claw-back provision that is the basis for Plaintiffs' claim that Evergreen is liable for unjust enrichment.  (*See* Complaint at ¶¶ 8, 10-12, 14, 15.)  Indeed, Plaintiffs point to the following language in Section 6 of the agreement to substantiate their claim:

> If the aggregate Incentive Allocations paid to the Advisor during the first three quarters of a calendar year exceed the actual Incentive Allocations to which the

---

[4] Unpublished opinions are attached as Exhibit A.

> Advisor is entitled at the year end based on the calendar year's performance of the Fund, the Advisor shall promptly repay such excess to the Fund, not to exceed one-half of the Incentive Allocations already received by the Advisor during the calendar year.

(*See* Complaint at ¶¶ 8, 10-12, 14, 15; Trading Advisory Agreement at §6.)  Other than the Trading Advisory Agreement, Plaintiffs allege no other facts to support its unjust enrichment claim.  In fact, Plaintiffs attached the Trading Advisory Agreement to its Complaint as the sole basis for their claim.  *See Johnson Prods. Co., Inc.*, No. 97 C 6406, 1998 U.S. Dist. LEXIS 2491 at *11 (recognizing that the existence of the written contract was not disputed since plaintiffs attached it to its complaint, and therefore, the Court could not ignore the obvious and pretend no contract existed to justify an unjust enrichment claim).

Accordingly, Plaintiffs cannot state a claim for unjust enrichment.  The Trading Advisory Agreement governs the parties' relationship and expressly includes the incentive allocations and claw-back provision that form the basis of their unjust enrichment claim.  Thus, Count II should be dismissed with prejudice.

## **CONCLUSION**

For the reasons set forth above, this Court should grant Defendant's motion and dismiss Count II with prejudice.

Dated: January 18, 2008                              Respectfully submitted,

                                                                  EVERGREEN ENERGY CAPITAL, LLC

                                                                  _____/s/ Amy J. Carletti_____
                                                                  One of its attorneys

Steven P. Handler
Amy J. Carletti
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois 60606
Telephone: (312) 372-2000

## **CERTIFICATE OF SERVICE**

      I, Amy J. Carletti, certify that service of the above instrument was accomplished pursuant to ECF upon counsel of record for plaintiffs, who is a Filing User according to the Court's General Order On Electronic Filing and by first-class U.S. Mail, postage prepaid upon:

> Richard T. Reibman
> Schwartz Cooper Chartered
> 180 N. LaSalle Street, Suite 2700
> Chicago, Illinois 60601

on this 18th day of January, 2008.

                                                                     /s/ Amy J. Carletti

CHI99 4927894-1.081707.0011