**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THREE ZERO THREE CAPITAL | ) | |
| PARTNERS, LLC, on behalf of itself and | ) | |
| 303 Energy Trading Alliance, LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No.  08 C 248 |
| v. | ) | |
| | ) | Judge Blanche M. Manning |
| WILLIAM JAMISON, JR., STEPHEN | ) | Magistrate Judge Arlander Keys |
| HARPER, JEFFREY ONG and EVERGREEN | ) | |
| ENERGY CAPITAL, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS WILLIAM JAMISON, JR.'S, STEPHEN HARPER'S AND JEFFREY**
**ONG'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**
**COUNTS I AND II OF PLAINTIFFS' VERIFIED COMPLAINT AT LAW**

William Jamison, Jr., Stephen Harper and Jeffrey Ong (collectively, the "individual

defendants") are the three traders and managing members of Evergreen Energy Capital, LLC, a

company that provides trading advisory services to investment clients.  In July 2006, Evergreen

and Plaintiff Three Zero Three Capital Partners, LLC ("Three Zero Three") entered into a

Trading Advisory Agreement in which there was a claw-back provision that allowed Three Zero

Three to recapture a portion of the incentive allocations and fees paid to Evergreen based on

Evergreen's calendar year trading performance.  Three Zero Three claims that the individual

defendants personally guaranteed any potential claw-back obligation that Evergreen may have

had.  However, as a matter of law, guarantees must be in writing to be enforceable.  Here, no

such guaranty has been, or can be, alleged.

Plaintiffs' Verified Complaint at Law ("Complaint") against the individual defendants

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) and (6) for three reasons.  First, this Court

lacks personal jurisdiction over the individual defendants.  Second, Plaintiffs fail to state a claim

for breach of contract against the individual defendants because there is no writing to
substantiate the guaranty, which as a matter of law, is unenforceable.  Third, Plaintiffs fail to
state a claim for unjust enrichment because that claim is based upon the same unenforceable oral
guaranty as the breach of contract claim.  Accordingly, this Court should dismiss the Complaint
against the individual defendants with prejudice pursuant to Fed. R. Civ. P. 12(b)(2) and (6).

### PERTINENT FACTS ALLEGED IN THREE ZERO THREE'S COMPLAINT[1]

On July 1, 2006, Three Zero Three and Evergreen entered into a Trading Advisory
Agreement in which Evergreen agreed to provide trading advisory services to 303 Energy
Trading Alliance, LLC (the "Fund").  (Complaint at ¶5; Trading Advisory Agreement, attached
as Exhibit A to the Complaint.)  Three Zero Three entered into the Trading Advisory Agreement
as the managing member of the Fund.  (Complaint at ¶1; Trading Advisory Agreement.)   The
individual defendants were not parties to the Trading Advisory Agreement except for their
acceptance and agreement to the provisions set forth in Section 12(e) of the Agreement only.
Section 12(e) does not concern either the Incentive Allocations paid by Three Zero Three to
Evergreen or the claw-back provision, both of which are the subject matter of this litigation.  Nor
does Section 12(e) deal with whether the individual defendants consent to the jurisdiction of
courts located in the State of Illinois.  Rather Section 12(e) deals with the liquidation of fund
assets upon termination of the Trading Advisory Agreement. Accordingly, Section 12(e) has
nothing to do with the claims asserted by Three Zero Three in its Complaint.

---

[1]  The individual defendants accept the facts pled in the Complaint as true for purposes of their Rule 12(b)(6) motion
to dismiss only.   For the purposes of their Rule 12(b)(2) motion, the individual defendants are not required to
accept, and do *not* accept, any of Plaintiff's allegations bearing on personal jurisdiction.

Pursuant to the Trading Advisory Agreement, Three Zero Three was to compensate Evergreen with quarterly Incentive Allocations based upon the profitability of the Fund. In particular, Section 6 of Trading Advisory Agreement provided:

> As compensation for the services to be provided hereunder, [Three Zero Three] shall pay [Evergreen] an Incentive Allocation equal to 25% of the Fund's New Net Profits on all assets under the Fund under management by [Evergreen]…The Incentive Allocations will be paid out on a quarterly basis with payment made no more than thirty (30) days after the end of each calendar quarter.

(Trading Advisory Agreement at §6.) Section 6 also contained a claw-back provision, which stated:

> If the aggregate Incentive Allocations paid to [Evergreen] during the first three quarters of a calendar year exceed the actual Incentive Allocations to which [Evergreen] is entitled at the year end based on the calendar year's performance of the Fund, [Evergreen] shall promptly repay such excess to the Fund (not to exceed one-half of the Incentive Allocations already received by [Evergreen] during the calendar year.)…(*Id.*)

Pursuant to the Trading Advisory Agreement, Evergreen provided trading advisory services for the Fund in 2007. The first quarter of 2007 was a profitable one for the Fund. (Complaint at ¶10.) In fact, on March 31, 2007, the Fund generated a net trading profit of $1,436,905.44. (*Id.*) Accordingly, Three Zero Three paid Evergreen an Incentive Allocation of $359,226.36 for the first quarter. (*Id.*) Unlike the first quarter, however, the second quarter of 2007 was not profitable for the Fund. As such, Evergreen did not earn an Incentive Allocation for the second quarter. (*Id.* at ¶12.)

According to Plaintiffs, on April 20, 2007, the individual defendants agreed to personally guaranty any claw-back obligation under Section 6 that Evergreen may have had at the end of calendar year. (*Id.* at ¶11.) Plaintiffs allege that, at that time, Evergreen's potential claw-back obligation was $179,613.08, or one half of the first quarter's Incentive Allocation. (*Id.* at ¶10.) Plaintiffs further claim that the individual defendants secured their guaranty by maintaining

aggregate individual capital account balances that totaled $192,619.29, which was at a level equal to or greater than the amount of Evergreen's potential year-end claw-back obligation. (*Id.* at 11.) Plaintiffs, however, do not allege that the guaranty was in writing and do not attach any writing(s) to the Complaint to substantiate this guaranty.

On August 21, 2007, after less than three quarters of performance, Three Zero Three informed Evergreen that it wished to terminate the Trading Advisory Agreement. (*Id.* at ¶12.) Although Three Zero Three did not allow Evergreen to perform under the Trading Advisory Agreement for the calendar year as set forth in Section 6, Plaintiffs nonetheless claim that, under the claw-back provision, Evergreen was obligated to repay $179,613.18. (*Id.*) According to Plaintiffs, they notified Evergreen of its claw-back obligation on September 28, 2007. Plaintiffs further claim that since then, Evergreen, Jamison, Harper and Ong have failed to repay this obligation. (*Id.* at ¶11, 14.)

Plaintiffs also allege that the individual defendants breached their personal guaranty of this potential claw-back obligation by redeeming their capital accounts on September 12 and 13, 2007. (*Id.* at ¶13.) When the individual defendants redeemed their accounts, Three Zero Three, according to its normal practice, released 90% of the individual defendants' funds to them. (*Id.*) Nevertheless, when completing its final monthly accounting, Three Zero Three took back the remaining 10% of the funds in the individual defendants' accounts, totaling $18,890.10, as a set-off to Evergreen's alleged claw-back obligation. (*Id.* at ¶14.) As such, Plaintiffs claim that the individual defendants are now liable for the remaining $160,723.08 ($179,613.19 minus the set-off of $18,890.10) pursuant their guaranty with Three Zero Three. (*Id.*)

Based upon these allegations, Three Zero Three filed its Complaint on behalf of itself and the Fund in the Circuit Court of Cook County, Illinois, County Department, Law Division on

December 6, 2007.  In its Complaint, Plaintiffs assert three claims against Evergreen and the individual defendants: (1) Count I alleges a breach of contract claim for the oral guaranty against the individual defendants; (2) Count II alleges a claim of unjust enrichment against all defendants; and (3) Count III seeks to enforce a line of credit note dated July 27, 2006 extended by Three Zero Three to Evergreen.  Evergreen and the individual defendants filed a Notice of Removal with this Court on January 11, 2008.

Jamison and Harper are citizens of the State of Washington, while Ong is a citizen of the State of Texas.  (*See* Affidavits of William Jamison, Jr. ("Jamison Aff.") at ¶2, Stephen Harper ("Harper Aff.") at ¶2, and Jeffrey Ong ("Ong Aff.") at ¶2, attached as Exhibits A, B and C, respectively.)  At all times relevant to this litigation, all three of the individual defendants were residents of the State of Washington.  (*See* Jamison Aff. at ¶3, Harper Aff. at ¶3, and Ong Aff. at ¶3.)  None has ever lived in nor owned real estate in Illinois.  (*See* Jamison Aff. at ¶4, Harper Aff. at ¶4, and Ong Aff. at ¶4.)  Nor have they ever paid an Illinois income tax or ever voted in Illinois.  (*See* Jamison Aff. at ¶5, Harper Aff. at ¶5, and Ong Aff. at ¶5.)  Additionally, none maintain any bank accounts in Illinois.  (*See* Jamison Aff. at ¶6, Harper Aff. at ¶6, and Ong Aff. at ¶6.)  Although Jamison has a life insurance policy with State Farm Insurance whose headquarters is in Illinois, he procured that policy through an agent located in Missouri.  (*See* Jamison Aff. at ¶7.)  Moreover, Jamison has a personal financial advisor who moved from California to Illinois in the summer of 2007; however, when Jamison invested the funds that this advisor directs, Jamison did so when the advisor lived in California.  (*See id.* at ¶8.)

Indeed, the only business contacts that the individual defendants had with Illinois were: (1) prior to Evergreen entering a the Trading Advisory Agreement with Three Zero Three, the individual defendants met with representatives from Three Zero Three in Chicago, Illinois to

discuss the business relationship; (2) during the time that Evergreen provided trading advisory services to Three Zero Three, Jamison and Ong met with representatives from Three Zero Three one time at Three Zero Three's offices in Chicago, Illinois and all three individual defendants communicated with individuals at Three Zero Three via telephone, email and instant messenger; and (3) when they invested in the Fund, they did so by sending their investments via personal check or wire to the Fund in Illinois.  (*See* Jamison Aff. at ¶¶11-14, Harper Aff. at ¶¶9-11, and Ong Aff. at ¶¶9-12.)

## **ARGUMENT**

I.      **THE COURT SHOULD DISMISS THE COMPLAINT AGAINST THE INDIVIDUAL DEFENDANTS WITH PREJUDICE FOR LACK OF PERSONAL JURISDICTION.**

In deciding a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff has the burden of demonstrating that jurisdiction is proper in this forum. *See Amato v. Creative Confections Concepts, Inc.*, No. 98 C 567, 1999 U.S. Dist. LEXIS 4174 at * 7 (N.D. Ill., March 25, 1999) (Manning, J.) (citing *McIlwee v. ADM Indust., Inc.*  17 F.3d 222, 223 (7th Cir. 1994)).[2]  The Court may receive and consider affidavits from both parties in deciding a motion to dismiss for lack of personal jurisdiction.  *See Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 208 F. Supp. 2d 918, 922 (N.D. Ill. 2002).  The Court should accept all factual allegations in the plaintiff's complaint as true, unless controverted by the defendants' affidavits.  *See Amato*, 1999 U.S. Dist. LEXIS 4174 at *7 (citing *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987)).  The court must then resolve all factual disputes in favor of the plaintiff.  *Id.* (citing *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988)).  Any

---

[2] Unpublished opinions are attached as Exhibit D.

facts contained in a defendant's affidavit, which are not refuted by the plaintiff, must be accepted as true by the Court. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).

In a diversity case such as this one, a federal district court in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois state court would have personal jurisdiction. *See United Fin. Mortgage Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 890 (N.D. Ill. 2002); *Amato*, 1999 U.S. Dist. LEXIS 4174 at *7. Accordingly, "under Illinois law, the plaintiff must show that personal jurisdiction complies with: (1) the Illinois long-arm statute; (2) the Illinois state constitution; and (3) federal constitutional law." *See Amato*, 1999 U.S. Dist. LEXIS 4174 at *7 (citing *RAR, Inc.*, 107 F.3d at 1276). Because the Illinois long-arm statute confers personal jurisdiction on any basis permitted by the Illinois and federal constitutions, this Court must ascertain whether the exercise of jurisdiction over the individual defendants satisfies the requirements of due process under the United States and Illinois Constitutions. *See* 735 ILL. COMP. STAT. 5/2-209(c) (2008); *Amato*, 1999 U.S. Dist. LEXIS 4174 at *8.

Under the due process clause of the Illinois constitution, jurisdiction over a defendant may be exercised by a state court "only when it is fair, just and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Amato*, 1999 U.S. Dist. LEXIS 4174 at *9-10. Moreover, because the Illinois long-arm statute authorizes jurisdiction to the federal constitutional limits, and because "there is little difference between the limits imposed by the Illinois Constitution and the federal limitations," personal jurisdiction can be determined on federal due process grounds. *See United Fin. Mortgage Corp.*,

245 F. Supp. at 891-92  (condensing the personal jurisdiction analysis into a single federal due process inquiry).

Federal due process requires that the exercise of personal jurisdiction over a nonresident defendant be reasonable.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Amato*, 1999 U.S. Dist. LEXIS 4174 at *11.  To be reasonable, "the nonresident defendant must have 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co.*, 326 U.S. 316.  Minimum contacts are those acts by which "a defendant purposefully avails [himself] of the privilege of conducting activities within the forum" such that the "defendant should reasonably anticipate being haled into court there." *Amato*, 1999 U.S. Dist. LEXIS 4174 at *12 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Personal jurisdiction can either be general or specific.  *See Amato*, 1999 U.S. Dist. LEXIS 4174 at *12.  Accordingly, both general and specific personal jurisdiction will be addressed separately.

### A.    This Court does not have general personal jurisdiction over the individual defendants.

"General jurisdiction applies when the case neither arises from nor is related to the defendant's contacts with the forum and is permissible only if the defendant has 'continuous and systematic general business contacts.'"  *Amato*, 1999 U.S. Dist. LEXIS 4174 at *13 (citing *RAR, Inc.* at 1227).  In this case, the Court does not have general personal jurisdiction over any of the individual defendants.

The individual defendants have few, if any, contacts with the State of Illinois. None has ever lived in nor owned real estate in Illinois.  (*See* Jamison Aff. at ¶4, Harper Aff. at ¶4, and

Ong Aff. at ¶4.)  In fact, at all times relevant to this litigation, all three of the individual

defendants were residents of the State of Washington.  (*See* Jamison Aff. at ¶3, Harper Aff. at ¶3,

and Ong Aff. at ¶3.)  Since then, Mr. Ong, relocated to Texas.  (*See* Ong Aff. at ¶2.) Moreover,

none of the individual defendants have ever paid an Illinois income tax nor have they ever voted

in Illinois.  (*See* Jamison Aff. at ¶4, Harper Aff. at ¶4, and Ong Aff. at ¶4.)  Additionally, none

maintain any bank accounts in Illinois.  (*See* Jamison Aff. at ¶5, Harper Aff. at ¶5, and Ong Aff.

at ¶5.)  Although Jamison has a life insurance policy with State Farm Insurance whose

headquarters is in Illinois, he procured that policy through an agent located in Missouri.  (*See*

Jamison Aff. at ¶7.)  Moreover, Jamison has a personal financial advisor who moved from

California to Illinois in the summer of 2007; however, when Jamison invested the funds that this

advisor directs, Jamison did so when the advisor lived in California.  (*See id.* at ¶8.) These few,

sporadic contacts with Illinois are not the type of "continuous and systematic general business

contacts" with Illinois to support this Court's exercise of general personal jurisdiction over them.

*See RAR, Inc.*, 107 F.3d at 1277; *Amato*, 1999 U.S. Dist. LEXIS 4174 at *14-15.  Therefore, the

individual defendants are not subject to general personal jurisdiction in Illinois.

> **B.    This Court does not have specific personal jurisdiction over the individual defendants.**

Nor does this Court have specific personal jurisdiction over the individual defendants.

Specific jurisdiction applies when the court asserts jurisdiction over a defendant in a suit "arising

out of or related to the defendant's contacts with the forum."  *Amato*, 1999 U.S. Dist. LEXIS

4174 at *12-13 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8

(1984)).  In deciding whether specific personal jurisdiction exists, the Court must determine

whether "the defendant has purposefully established minimum contacts within the forum State,

and whether, by traditional standards, those contacts would make personal jurisdiction

reasonable and fair under the circumstances." *Id.* at *16-17 (citing *RAR, Inc.*, 107 F.3d at 1277)). What is critical in this analysis is that the defendant "should reasonably anticipate being haled into court" in Illinois. *Id.*

In a breach of contract action, only dealings between the parties regarding the disputed contract are relevant for specific personal jurisdiction purposes. *Id.* at *21 (citing *RAR, Inc.*, 107 F.3d at 1278). Merely entering into a contract with an Illinois party is not enough to establish the requisite minimum contacts. *See RAR, Inc.*, 107 F.3d at 1277. "Rather, prior negotiations and contemplated future consequences, along with the terms of the contract, and the parties' actual course of dealing must indicate the purposeful availment of doing business in the forum state that makes litigating in the state foreseeable to the defendant." *Id.*

For example, in *Amato*, the plaintiff sued defendant Nicolet for breach of contract related to a guaranty. *Id.* at *3-4. Nicolet, the president and shareholder of Creative Confections Concepts, Inc. personally guaranteed repayment of a promissory note on behalf of Creative. *Id.* at *3. Nicolet filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) asserting lack of personal jurisdiction. *Id.* at *6. Although Nicolet made numerous visits to Illinois on behalf of Creative, attended meetings in Illinois in the early stages of Creative's corporate formation and held telephone meetings from his location in Wisconsin to Illinois, this Court found that there was no specific personal jurisdiction over Nicolet. *Id.* at *22-25. In granting Nicolet's motion to dismiss for lack of personal jurisdiction, this Court found that Nicolet's contacts did not relate to the causes of action in the case, including the claim for breach of guaranty. *Id.* at *24-25.

Similarly, in this case, there are no facts that justify exercising specific personal jurisdiction over the individual defendants. Just as in *Amato*, although the individual defendants communicated with individuals at Three Zero Three and the Fund via telephone, email and

instant messenger, attended a meeting with Three Zero Three in Chicago before entering into the

Trading Advisory Agreement, and Jamison and Ong came to Chicago once to meet with

representatives from Three Zero Three, these contacts are not enough to indicate the purposeful

availment of doing business in Illinois such that litigating here would be foreseeable to them.

(*See* Jamison Aff. at ¶¶11-14, Harper Aff. at ¶¶9-11, and Ong Aff. at ¶¶9-12; *Id.* at *22-25.)

Moreover, in its Complaint, Plaintiffs fail to allege any contacts that establish specific

jurisdiction over the individual defendants.  The Complaint merely states that the individual

defendants "are individuals who reside in the metropolitan area of Spokane, Washington.  They

are the principals, owners and traders of Evergreen" (Complaint at ¶3)  and "Defendants

Jamison, Harper and Ong agreed to individually guaranty the clawback obligations in section 6

of [the Trading Advisory Agreement]."  (Complaint at ¶11.)  These statements are insufficient to

establish that this Court has specific jurisdiction over the individual defendants.  The plaintiffs

bear the burden of establishing personal jurisdiction in this case, and their failure to do so

warrants dismissal of this action as to the individual defendants.

Because this Court does not have either general or specific personal jurisdiction over the

individual defendants, it should dismiss the Complaint against the individual defendants with

prejudice pursuant to Fed. R. Civ. P. 12(b)(2).

## II.    THREE ZERO THREE FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT AGAINST THE INDIVIDUAL DEFENDANTS, AND THEREFORE, THE COURT SHOULD DISMISS COUNT I WITH PREJUDICE.

Even assuming that there is personal jurisdiction over the individual defendants, Plaintiffs

cannot, as a matter of law, bring its claim for breach of an oral guaranty under Illinois law.  The

Court must dismiss a case if, when viewed in the light most favorable to the plaintiff, the

complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *AA*

*Sales & Assoc., Inc. & Trade Amer. Corp. v. JT&T Products Corp.*, 48 F. Supp. 2d 805, 807

(N.D. Ill. 1999). In this case, even viewing the facts in the light most favorable to them, Three

Zero Three and the Fund fail to state a claim for breach of contract against the individual

defendants. As a matter of law, a guaranty must be in writing. Hence, the oral guaranty as

alleged in the Complaint is unenforceable. As such, Count I should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(6).

In Illinois, promises to answer for the debt of another must be in writing. *See* 740 ILCS

80/1; *Brown & Shinitzsky Chartered v. Dentinger*, 455 N.E.2d 128, 130 (Ill. App. Ct. 1983). The

statute of frauds mandates that:

> No action shall be brought…to charge the defendant upon any special promise to answer
> for the debt, default or miscarriage of another person…unless the promise or agreement
> upon which such action shall be brought, or some memorandum or note thereof, shall be
> in writing.

740 ILCS 80/1. To be a "special promise" under to the statute of frauds, the promise must be

collateral; an "original" or "independent" promise is not a "special promise" within the statute.

*Swartzberg v. Dresner*, 437 N.E.2d 860, 865 Ill. App. Ct. 1982). *Accord Hodgman, Inc. v. Feld*,

447 N.Ed.2d 450, 456 (Ill. App. Ct. 1983). To determine whether a promise is original or

collateral, the Court should look at all of the circumstances surrounding the transaction, and not

the particular words used. *Id.* Therefore, statute of frauds applies to "promises, the main

purposes of which are to assume or guarantee the debt of another" and not to "cases in which

credit is extended to the promisor, or to cases in which the object or the promise is to promote

some interest, purpose or advantage of the promisor." *Id.*

Accordingly, an oral contract to guarantee the debt of another is unenforceable.

*Dentinger*, 455 N.E.2d at 130. In *Dentinger*, the plaintiff, a law firm, brought suit against the

general and limited partners of a limited partnership to recover fees for legal services provided in

pursuing a bankruptcy petition on behalf of the partnership. *Id.* at 128. Michael Pritzker was a

limited partner in the partnership. *Id.* The plaintiff alleged that Pritzker individually guaranteed payment to plaintiff for its legal fees on behalf of the partnership. *Id.* The trial court dismissed the plaintiff's claims under the alleged guaranty, finding that because there was no written statement exhibiting the personal guaranty, the guaranty was unenforceable. *Id.* at 128-29. The Appellate Court of Illinois affirmed. *Id.* at 129. Accordingly, the court held that "a promise to pay the debt of another which is not written and duly signed cannot be enforced either at law or in equity." *Id.* at 129.

Similarly, the individual defendants' guaranty as alleged in the Complaint is unenforceable as a matter of law. In their Complaint, Plaintiffs merely allege that the individual defendants guaranteed Evergreen's potential claw-back obligation. (Complaint at ¶11.) They do not, however, attach any writing to the Complaint as evidence of this guaranty. Moreover, just as in *Dentinger*, the individual defendants' alleged guaranty was a collateral promise to pay Evergreen's potential claw-back obligation. There is no writing containing this alleged guaranty. Consequently, the oral guaranty as alleged in the Complaint, is unenforceable, and Count I should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## III. THREE ZERO THREE ALSO FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT AGAINST THE INDIVIDUAL DEFENDANTS, AND THEREFORE, THE COURT SHOULD DISMISS COUNT I WITH PREJUDICE.

Plaintiffs unjust enrichment claim is based upon the same unenforceable oral guaranty as its breach of contract claim in Count I. They assert that "Jamison, Harper and Ong agreed to individually guaranty [Evergreen's] claw-back obligations." (Complaint at ¶ 11.) They further identify the Trading Advisory Agreement as the underlying obligation of the individual defendants' guaranty. This Trading Advisory Agreement specifically governs the incentive allocations that Three Zero Three paid to Evergreen in 2007 and Evergreen's potential claw-back

obligation.   (*See* Trading Advisory Agreement at §6.)  Indeed, Three Zero Three points to the following language in Section 6 of the agreement as the basis of the guaranty:

> If the aggregate Incentive Allocations paid to the Advisor during the first three quarters of a calendar year exceed the actual Incentive Allocations to which the Advisor is entitled at the year end based on the calendar year's performance of the Fund, the Advisor shall promptly repay such excess to the Fund, not to exceed one-half of the Incentive Allocations already received by the Advisor during the calendar year.

(*See* Complaint at ¶¶ 8, 10-12, 14, 15; Trading Advisory Agreement at §6.)  In short, the oral guaranty of Section 6 of the Trading Advisory Agreement forms the basis for Three Zero Three's claim that the individual defendants are liable for unjust enrichment.[3]

Plaintiffs cannot, however, avoid the Illinois Statue of Frauds by re-characterizing their guaranty claim as unjust enrichment instead of breach of contract.  Whatever Plaintiffs call them, their claims against the individual defendants are an attempt to enforce an oral guaranty. As noted above, one cannot have a breach of contract claim based upon an oral guaranty.  *See* discussion at Section II *supra*.  Accordingly, Three Zero Three cannot state a claim for unjust enrichment.  As such, the Court should dismiss Count II with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons set forth above, this Court should grant the individual defendants' motion and dismiss all claims against the individual defendants with prejudice.

---

[3] As noted in Evergreen's motion to dismiss filed contemporaneously herewith, when the relationship between two parties is governed by an express contract, a claim for unjust enrichment cannot stand.  *See* Defendant Evergreen's Motion to Dismiss Count I of Plaintiffs' Verified Complaint at Law.  The individual defendants incorporate by reference, the arguments made by Evergreen in its motion to dismiss.

Dated: January 18, 2008

Respectfully submitted,

WILLIAM JAMISON, JR., STEPHEN
HARPER, JEFFREY ONG

_____/s/ Amy J. Carletti_____
One of their attorneys

Steven P. Handler
Amy J. Carletti
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois 60606
Telephone: (312) 372-2000

<u>**CERTIFICATE OF SERVICE**</u>

I, Amy J. Carletti, certify that service of the above instrument was accomplished pursuant to ECF upon counsel of record for plaintiffs, who is a Filing User according to the Court's General Order On Electronic Filing and by first-class U.S. Mail, postage prepaid upon:

> Richard T. Reibman
> Schwartz Cooper Chartered
> 180 N. LaSalle Street, Suite 2700
> Chicago, Illinois 60601

on this 18th day of January, 2008.

> _____/s/ Amy J. Carletti_____

CHI99 4928270-2.081707.0012