# U.S. DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| THREE ZERO THREE CAPITAL PARTNERS, LLC, and 303 Energy Trading ALLIANCE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM JAMISON, JR., STEPHEN HARPER, JEFFREY ONG and EVERGREEN ENERGY CAPITAL, LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 08 C 248 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## FIRST AMENDED VERIFIED COMPLAINT AT LAW

Plaintiffs, Three Zero Three Capital Partners, LLC ("Plaintiff 303 Capital") and 303 Energy Trading Alliance, LLC ("Plaintiff Fund" or the "Fund") complains of Defendants William Jamison, Jr., Stephen Harper, Jeffrey Ong, and Evergreen Energy Capital, LLC as follows:

### Count I
### (Breach of Contract v. Jamison, Harper and Ong)

1. Plaintiff 303 Capital is an Illinois limited liability company with offices in Chicago, Illinois. Plaintiff 303 Capital is owned by two Illinois limited liability companies, which, in turn, are wholly owned by citizens of the State of Illinois. Plaintiff 303 Capital is the managing member of Plaintiff Fund. Plaintiff Fund, an Illinois limited liability company, operates as a private investment fund that specializes in the speculative investment of energy futures, derivatives and related products. The offices of Plaintiff Fund are located in Chicago, Illinois. Plaintiff Fund has more than 150 owners in numerous states throughout the United States. At least one owner of the Fund, John Morse, is a citizen of the State of Washington.

2. Defendant Evergreen Energy Capital, LLC is a Delaware limited liability company ("Evergreen") located in the State of Washington. Evergreen provided trading advisory services to Plaintiff Fund during the relevant time period of this Complaint. Upon information and belief, all of the owners of Defendant Evergreen are citizens of the State of Washington (or in the alternative, two of the owners of Evergreen are citizens of the State of Washington and one of the owners is a citizen of the State of Texas).

3. Upon information and belief, Defendants William Jamison, Jr. ("Jamison"), Stephen Harper ("Harper") and Jeffrey Ong ("Ong") are individuals who reside in, and are citizens of, the State of Washington. In the alternative, Jamison and Harper reside in, and are citizens of the State of Washington, and Ong resides in and is a citizen of the State of Texas. They are the principals, owners and traders of Evergreen.

4. Venue of this case is proper in Cook County, Illinois. Section 20 of the Trading Advisory Agreement described below provides that, "This Agreement is governed…in accordance with [Illinois law.] Any dispute relating to…this Agreement shall be litigated exclusively in state or federal courts having their situs within the City of Chicago, Illinois." The financial obligations of Defendants Jamison, Harper and Ong to the Fund which are sought to be enforced hereunder relate to and arise out of their assumption of certain obligations under the Trading Advisory Agreement with respect to the claw-back provision described below. The Line of Credit Note sought to be enforced in Count III requires enforcement exclusively within courts located in Cook County, Illinois. Defendants performed services for the Fund, which at all times was domiciled and doing business in Cook County, Illinois.

5. On or around July 1, 2006, Evergreen entered into a Trading Advisory Agreement with Plaintiffs, whereby Evergreen agreed to render trading advisory services to the Fund. A copy of the Trading Advisory Agreement is attached as <u>Exhibit A</u>.

6. Under the Trading Advisory Agreement, Defendant Evergreen was compensated only if its trading was profitable for the Fund. Defendant Evergreen was not paid fees. Instead, it received an "Incentive Allocation." To this end, Defendant Evergreen established and held a capital account within the Fund (see <u>Exhibit A</u>, section 7), and, in the event Defendant Evergreen's trading for the Fund was profitable during a given period, Plaintiffs allocated to Defendant Evergreen's capital account the Incentive Allocation. (see <u>Exhibit A</u>, section 6).

7. However, Incentive Allocations were partially provisional. The Trading Advisory Agreement contained what is commonly referred to in the trading industry as a "claw-back" provision. A claw-back provision allows a fund to recapture (i.e, take back or "claw back") all or a portion of excess, provisional, incentive allocations and fees. The purpose of a claw-back provision is to ensure that a trading advisor is not unreasonably over-compensated for its services.

8. Section 6 of <u>Exhibit A</u> contains a claw-back provision which provides that,

> If the aggregate Incentive Allocations paid to the Advisor during the first three quarters of a calendar year exceed the actual Incentive Allocations to which the Advisor is entitled at the year end based on the calendar year's performance of the Fund, the Advisor shall promptly repay such excess to the Fund, not to exceed one-half of the Incentive Allocations already received by the Advisor during the calendar year.

9. Accordingly, the Fund had claw-back rights which were capped at one-half of Incentive Allocations previously allocated to Defendant Evergreen.

10. Defendant Evergreen earned its first Incentive Allocation under the Trading Advisory Agreement at the conclusion of the first quarter of 2007; on March 31, 2007, it

generated a net trading profit of $1,436,905.44. Under the compensation term, Evergreen earned an Incentive Allocation of $359,226.36. Under the claw-back provision, Evergreen would be responsible for paying back up to $179,613.18 should its year-end profits not support such an Incentive Allocation.

11.    Rather than carry an amount of money equal to $179,613.18 in the Evergreen capital account, on or around April 20, 2007, Defendants Jamison, Harper and Ong stated that they wanted to be able to draw down Defendant Evergreen's capital account. To induce Plaintiffs to agree to this, Defendants Jamison, Harper and Ong agreed to individually guaranty the claw-back obligations in section 6 of Exhibit A. To secure their guaranty, they further agreed to maintain aggregate individual capital account balances at a level equal to or greater than the amount or the potential claw-back. Defendant Jamison had previously invested in the Fund and a capital account was established for him as of October 1, 2006. As of June 1, 2007, Defendants Harper (along with his wife) and Ong invested in the Fund and individual capital accounts were established for them. Defendants Ong's and Harper's capital accounts increased the Defendants' aggregate capital account balances from $127,619.29 to $192,619.29.

12.    During the second quarter of 2007, Defendant Evergreen lost $1,833,625.43 trading on behalf of the Fund. Under the terms of the Trading Advisory Agreement, Plaintiffs reduced Defendant Evergreen's trading capital and put Defendants on notice of their claw back obligation. On or around August 21, 2007, Plaintiffs notified Defendants that they wished to terminate the Trading Advisory Agreement due to poor trading performance. Defendant Evergreen concluded winding down trading activities by September 26, 2007. On or around September 28, 2007 Plaintiffs notified Defendant of its obligation to repay $179,613.18 of its 2007 Incentive Allocation under the claw back term of the Trading Advisory Agreement.

13.     On or around September 12 and 13, 2007, in knowing breach of their individual promises to maintain the required minimum balances in their aggregate capital accounts, Defendants Jamison, Harper and Ong sought to redeem their capital accounts, without notifying Plaintiff 303 Capital's senior management. As a practice, approximately 90% of requested redemption amounts are released before final monthly accounting is completed.  Approximately 90% of Defendants Jamison's, Harper's and Ong's capital account balances were wire transferred to them.  A member of Plaintiff 303 Capital's senior management was aware that various redemptions were occurring at that time, but did not realize the redemptions included the Defendants' redemptions.

14.     Plaintiffs took back the remaining 10% of Defendants Jamison's, Harper's and Ong's capital account balances and applied the $18,890.10 to the claw-back obligation. Defendants Evergreen, Jamison, Harper and Ong have failed and refused to pay the outstanding portion of the claw-back. Defendants owe the remaining amount of the claw-back, which is $160,723.08 (the total claw-back amount of $179,613.18, minus the amount taken back of $18,890.10)

15.     Pursuant to section 6 of Exhibit A, each and all of Defendants Evergreen, Jamison, Harper and Ong are obligated to pay Plaintiffs its reasonable attorneys' fees and court costs in enforcing its rights under the claw-back provision.

WHEREFORE,  Plaintiffs pray for the entry of a judgment in its favor and against Defendants William Jamison, Jr., Stephen Harper and Jeffrey Ong, jointly and severally, in the amount of $160,723.08 plus Plaintiffs' legal fees and costs of collection and such other amounts as the Court deems just and proper.

## Count II
## Unjust Enrichment vs. All Defendants

16.    Plaintiffs incorporate by reference paragraphs 1 through 15 of Count I as paragraph 16 of Count II.

17.    Defendants Jamison, Harper, Ong and Evergreen have been unjustly enriched in the aggregate amount of $160,723.08.

WHEREFORE, Plaintiffs pray for the entry of a judgment in its favor and against Defendants William Jamison, Jr., Stephen Harper, Jeffrey Ong and Evergreen Energy Capital, LLC, jointly and severally, in the amount of $160,723.08 plus costs plus such other amounts as the Court deems just and proper.

## Count III
## (Enforcement of Line of Credit Note vs. Evergreen)

18.    Plaintiff 303 Capital incorporates by reference paragraphs 1 through 15 of Count I as paragraph 18 of Count III.

19.    On or about July 27, 2006, Defendant Evergreen executed and delivered to Plaintiff 303 Capital a Line of Credit Note ("Note") in the original principal amount of $100,000. A true and correct copy of the Note is attached as Exhibit B.

20.    The Note provides that the principal amount thereunder is due and payable thirty days after demand.

21.    On or about September 28, 2007, Plaintiff 303 Capital made demand for payment of the Note.

22.    Interest at the rate of ten percent per annum accrues on the principal balance of the Note following thirty days after demand.

23.    Defendant Evergreen has failed to pay the Note.

24. The principal amount outstanding on the Note is $62,500. Interest commenced accruing on October 26, 2007 at the per annum rate of ten percent.

25. The Note requires Defendant Evergreen to pay Plaintiff 303 Capital's reasonable attorneys' fees and expenses in enforcing the Note.

WHEREFORE, Plaintiff 303 Capital prays for the entry of a judgment in its favor and against Defendant Evergreen Energy Capital, LLC in the amount of $62,500 plus interest at the per diem rate of $17.36 commencing October 26, 2007 and continuing through the date of judgment, plus Plaintiff's reasonable legal fees and expenses in enforcing the Note plus such other amounts as the Court deems just and proper.

Dated: January 22, 2008

**THREE ZERO THREE CAPITAL PARTNERS, LLC and 303 ENERGY TRADING ALLIANCE, LLC**

/s/Richard T. Reibman
One of its Attorneys

Patrick T. Stanton
Richard T. Reibman
Schwartz Cooper Chartered
180 N. LaSalle Street, Suite 2700
Chicago, IL 60601
Telephone: (312) 346-1300
Attorney No. 31395

## VERIFICATION

Under penalties provided by law pursuant to Section 1-109 of the Code of Civil Procedure, Edward Donnellan certifies that he is the an authorized agent of Three Zero Three Capital Partners, LLC and 303 Energy Trading Alliance, LLC, the Plaintiffs herein, that he has read the allegations of the foregoing Verified Complaint, that he has personal knowledge thereof and that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters he certifies as aforesaid that he verily believes the same to be true.

_____
EDWARD DONNELLAN